IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, *for the use and benefit of* AGS CONTRACTING, LLC, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO.: 7:20-CV-00255 (WLS) |
| OUTSIDE THE BOX, LLC a/k/a OUTSIDE THE BOX VA, LLC, and HUDSON INSURANCE COMPANY, | : : : : | |
| Defendants. | : | |

## ORDER

On July 6, 2022, the Court held a Pretrial Conference in this case.[1] At the Pretrial Conference the Parties were ordered to confer as to the following issues. First, which issues, in this action, are governed by Georgia contract law as opposed to the Miller Act. Second, whether Government websites[2] are self-authenticating. Finally, whether a General or Specialized verdict form or some combination was appropriate. The Parties were instructed to respond, and if necessary, put forth their respective positions on those issues in written briefs by no later than Thursday, July 21, 2022.[3] Accordingly, briefing has now concluded, and these issues are ripe for disposition.

---

[1] The Court notes for the purposes of the record that this matter was scheduled to be tried in the Valdosta Division of the Middle District of Georgia, during the August 2022 term of Court. The August trial date was continued to November upon Motion of the Defendant. (Docs. 58 & 60.)

[2] Specifically, those ending in .gov and pertaining to the weather.

[3] The Court notes for the purposes of the record that Plaintiff initially missed the July 21, 2022, deadline, submitting their Response on July 28, 2022. (Doc. 56.) As this matter was continued, however, as additional briefing would assist the Court in ruling on these respective issues, the Court ordered Defendants to file a Reply, if so desired. (Doc. 59.) Defendants filed their Reply on August 4, 2022. (Doc. 61.)

1

**I.     The present action is governed by the Federal Acquisition Regulations**

As stated *supra*, this Court previously ordered the Parties to confer and inform the Court as to whether the issues in this action were governed by Georgia contract law, as opposed to the Miller Act, 40 U.S.C. § 3131 *et seq*.[4][5] (Doc. 55.) The Court notes for the purposes of the record that the Parties presented argument on issues not inquired into by the Court. (Docs. 56, 57 & 61.) It is apparent from that unrequested argument that the Parties are not in agreement as to what counterclaims were asserted by the Defendant. (Docs. 23. 57 & 61.) As it shall be beneficial to resolve which claims were properly pled by the Defendant prior to trial, the Court shall address that issue as well in this section.

In the present case, the Parties are in agreement that to the extent the Federal Acquisition Regulation ("FAR") is expressly incorporated by reference into the subcontract issue, that FAR provision, or any other applicable provisions of the subcontract would control. (Docs. 56 at 3 & 57 at 2.) Pursuant to Prime Contract Flow-Down Requirements § 52.233-4 of FAR is incorporated into the contract. (Doc. 1-4 at 19.) § 52.233-4 provides that "United States law will apply to resolve any claim of breach of this contract." Paragraph ¶ 39.0 of the AGS subcontract, which governs Disputes and Choice of Law, further provides that the agreement between the Parties "shall be governed in all respects by the laws of the State of Georgia." (Doc. 1-4 at 14.) The conflict between those provisions is resolved by paragraph ¶ 2.0 of the subcontract, which states the order of precedence in the event of a conflict. (Doc. 1-4 at 1.)

In the present case, the prime contract flow down requirements take priority over the general terms and conditions of the subcontract. (*Id.*) Accordingly, the Parties are correct that

---

[4] The Court notes for the purposes of the record that neither party properly responded to the question propounded by the Court, but rather utilized the opportunity to present additional argument on matters that the Court had not inquired into. (Docs. 56, 57 & 61.) As the Parties briefs, significantly diverge on even the nature of the issues presently before this Court, the Court has taken the opportunity to review Defendant's Counterclaim and hereby finds that the following claims were properly brought before this Court.

[5] The Court notes for the purposes of the record that Plaintiff brings the following claims against Defendants. (1) Breach of Contract; (2) a Quantum Meruit claim; (3) a claim for damages pursuant to the Miller Act; and (4) breach of North Carolina General Statute § 22C-2 by failure to make timely payments. (Doc. 1.) Defendants bring a counterclaim for anticipatory repudiation of the contract. (Doc. 23.)

2

to the extent the Federal Acquisition Regulation ("FAR") is expressly incorporated by reference into the subcontract issue, that FAR provision, or any other applicable provisions of the subcontract would control. But in the event that the issue is not incorporated by reference, Georgia law controls.

Accordingly, the FAR provisions would govern Plaintiff's claims against Defendant. However, as stated *supra* it is evident that the Parties are not in agreement as to what counterclaims Defendant is asserting against Plaintiff. It is evident, as Plaintiff contends that Defendant asserts a single counterclaim in this action for anticipatory repudiation (Doc. 57 at 2) while Defendant contends in their Reply, in the first instance, that they in fact stated claims for default termination and breach of contract as well. (Doc. 23 ¶¶ 110, 113, 115, 117 & Doc. 61 at 3.)

The Court notes that while Defense Counsel may have attempted to articulate counterclaims for default termination and breach of contract (Doc. 23 at 15 ¶¶ 110, 113, 115 & 117) those claims were not sufficiently articulated to put Plaintiff, or this Court, on notice that Defendant was bringing claims for default termination or breach of contract. Further it is evident from the record that Plaintiff and this Court both were under the impression that Defendant's "counterclaim was limited to a single claim against Plaintiff for anticipatory repudiation." (Docs. 26, 33, 42, 52, & 57.) It was Defendant's responsibility to bring this oversight, if any, to the Court's as well as opposing counsel's attention, during any of the extensions of discovery this Court granted to the Parties to engage in settlement negotiations, but Defendant did not do so insofar as the Court has been informed. More importantly, Defendant has never formally amended or moved to amend its counterclaim.

Accordingly, this Court finds that even if the Defendant now articulates claims for default termination and breach of contract, Defendant has waived those counterclaims. Accordingly, Defendant's counterclaim shall be limited to a claim of anticipatory repudiation.

**II.     Government Websites are Self-Authenticating for the purposes of this action**

Turning to the second question propounded by this Court at the July 6, 2022 pre trial conference, whether Government websites are self-authenticating for the purposes of this action. (Doc. 55.) Once again, the Parties presented argument that the Court did not ask for. Specifically, Defendant presented argument to support Defendant's position that Plaintiff's

3

breach of contract due to severe weather was not proper. (Doc. 57.) That issue was not inquired into by this Court, and therefore the Court does not address it. The Court shall only address whether Government websites are self-authenticating for the purposes of this action.

In the present case, the Parties are in agreement that the evidence presented from a ".gov" website – specifically a direct printout from an official Government website – is self-authenticating and will assist the trier of fact if relevant. (Docs. 57 & 61.) Accordingly, it is hereby **ORDERED** that for the purposes of this action, direct printouts from an official Government website relating to the weather are self-authenticating.

### III.   A specialized verdict form is appropriate in this case

Turning finally, the last question propounded by this Court at the July 6, 2022 pretrial conference, whether a general or specialized verdict form was appropriate. (Doc. 55.) In the present case, the Parties are in agreement that a special verdict form would assist the jury in their deliberations. (Docs. 56, 57 & 61.) The Parties have both submitted their proposed special verdict form for the Court's consideration. The Court shall duly consider the Parties proposals and issue its own verdict form, allowing for review and comment by Counsel, with appropriate adjustments for the requirements of the instant case.  The Parties may also timely submit their joint proposed special verdict forms.

**SO ORDERED**, this 7th day of October 2022.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**